IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


BRIDGET J. QUARRLES,

    Plaintiff,

vs.              Case No. 12-2360-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

    Defendant.


MEMORANDUM AND ORDER

  This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

  The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On October 30, 2009, administrative law judge (ALJ) Raul C. Pardo issued the 1st ALJ decision, finding that plaintiff was not disabled because she could perform past relevant work (R. at 117-125). On July 15, 2010, the Appeals Council issued an order

remanding the case to the ALJ for further hearing in order to address a number of errors and to obtain additional evidence (R. at 126-130). On March 4, 2011, ALJ Guy E. Taylor issued the 2nd ALJ decision. Plaintiff alleges that she has been disabled since March 8, 2005 (R. at 20, 117). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 20). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 20). At step two, the ALJ found that plaintiff has the following severe impairments: cardiomyopathy; planter fasciitis in the right foot; degenerative disc disease of the cervical spine; mild spondylosis in the lumbar spine; obesity; major depressive disorder with psychosis; anxiety disorder; and schizoaffective disorder (R. at 20). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21). After determining plaintiff's RFC (R. at 22-23), the ALJ determined at step four that plaintiff is unable to perform her past relevant work (R. at 29). At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 29-30). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 30-31). The Appeals Council denied the request for review of the 2nd ALJ decision on May 8, 2012 (R. at 1-3).

**III. Did the ALJ err in his assessment of the evidence from plaintiff's treatment providers?**

In a report dated in April 2009 (Exhibit 1F), plaintiff's physician, case manager, and mental health clinician signed a disability determination report indicating that plaintiff had a current GAF of 40 and a GAF of 50 for the past year.[2] The report noted that plaintiff suffered from visual hallucinations (see bloodshed people without their skin) and auditory hallucinations (hearing people talk and bells ringing, and voices of death). These hallucinations have worsened from 2004 to the time of the writing of the report. The report also states that plaintiff's insight is poor because she lacks insight at times regarding decision making. The report notes that she has contemplated suicide (R. at 406-409). The report also includes the following language:

> Bridget has always maintained a job and was able to provide for herself and her daughter in the past. However, she is currently unemployed and it is highly unlikely she

---

[2] GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job).

> 31-40: **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoid friends, neglects family, and is unable to work…).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

>       will find substantial employment due to her
>       symptoms of mental illness and of her
>       physical ailments as well.

(R. at 407). The treatment providers then checked a box indicating the following:

>       As a result of this individual's psychiatric
>       symptoms they appear to only marginally be
>       able to obtain and maintain employment and
>       it seems unlikely that significant
>       improvement will occur in the next twelve
>       months.

(R. at 408).

The 1st ALJ decision stated the following regarding this medical opinion (Exhibit 1F):

>       Although the claimant's mental health
>       counselor initially marked a box opining the
>       claimant as seeming marginally able to
>       obtain and maintain employment, her follow
>       up reports done every four months showed
>       <u>profound</u> improvement (Exhibit 1F, 10F, 26F,
>       33F). The claimant was an active
>       participant in her treatment and recovery
>       goals (Exhibit 1F).

(R. at 124, emphasis added).

On July 15, 2010, the Appeals Council remanded the case to the ALJ for further hearing. In their decision, they stated the following:

>       The hearing decision does not contain an
>       adequate evaluation of the treating source
>       opinion in Exhibit 1F. In April 2009, the
>       claimant's mental health clinician indicated
>       that due to psychiatric symptoms the
>       claimant appears "marginally able to obtain
>       and maintain employment and it seems
>       unlikely that significant improvement will

7

> occur in the next twelve months" (Exhibit 1F at 6-8). The hearing decision, page 8, mischaracterizes this opinion as being given initially during treatment with follow up reports showing improvement, but the evidence reflects that the claimant's mental functioning fluctuated, with Global Assessment of Functioning (GAF) scores ranging from 40-55 (Exhibits 1F; 10F; 26F; 33F), and at the time of the opinion the claimant held a GAF score of 40 (Exhibit 1F), indicating serious limitations in social and occupational functioning. Further consideration of this medical opinion is necessary.

(R. at 128). The Appeals Council also directed the ALJ to obtain additional evidence regarding plaintiff's depression and anxiety, including, if warranted and available, consultative exams with psychological testing and medical source statements about what the claimant can still do despite the impairments, and if necessary, obtain evidence from a medical expert (R. at 128).

The second ALJ decision stated the following about the medical opinion contained in Exhibit 1F:

> The claimant's counselor and psychiatrist indicated she was only marginally able to obtain and maintain employment as a result of her psychiatric symptoms (Exhibit 1F/5-8). Such opinion may be that of a treating psychiatrist, but it is not accorded controlling weight in reaching the conclusions herein as it is neither consistent with the treatment notes proffered by said treating psychiatrist (See Exhibit 1F/24) nor other evidence of record (SSR 96-2p). Such records show <u>significant</u>

>                   improvement in the claimant's mental health
>                   status.

(R. at 29, emphasis added).

The 1st ALJ decision discounted the medical opinion because the ALJ asserted that subsequent treatment records showed "profound" improvement (R. at 124). The Appeals Council decision stated that the evidence reflected that plaintiff's mental functioning fluctuated, with GAF scores ranging from 40-55, indicating serious limitations in social and occupational functioning; therefore, further consideration of this medical opinion was necessary (R. at 128). In the 2nd decision, the ALJ discounted the medical opinions because of the ALJ's assertion that subsequent treatment records showed "significant" improvement in plaintiff's mental health status, even though the Appeals Council had already held that the evidence did not support an almost identical finding in the 1st ALJ decision.

Furthermore, the 2nd ALJ decision contains the following statement:

>                   The only record of a Global Assessment of
>                   Functioning (GAF), a measurement used to
>                   estimate the claimant's mental functioning,
>                   below 50 was in November 2010 (Exhibit
>                   44F/19). A GAF of 45 indicates serious
>                   difficulties in functioning. However, there
>                   is no indication that this level of
>                   functioning lasted for the required duration
>                   of 12 months.

9

(R. at 27). This statement represents a serious misrepresentation of the record. In fact, the record shows the following GAF scores of 50 or below:

| Date | GAF score |
|---|---|
| Dec. 8, 2006 | 48 (R. at 2234) |
| Aug/Nov. 2008 | 40 (R. at 431) |
| Feb. 12, 2009 | 46-50 (R. at 414) |
| Feb. 27, 2009 | 50 (R. at 416) |
| April 2009 | 40 current<br>50 past year<br>(R. at 406-408) |
| July 16, 2010 | 45 current<br>55 highest GAF in<br>   past year<br>(R. at 2928) |
| Nov. 18, 2010 | 45 (R. at 2915) |
| Feb. 20, 2012 | 45 (R. at 2949) |
| March 12, 2012 | 45 (R. at 2940) |

Thus, the record clearly shows not just one score of 50 or below, as asserted by the ALJ, but 9 scores of 50 or below over a period from 2006-2012.[3] This represents a serious misrepresentation of the record. The evidence confirms the decision of the Appeals Council in 2010 when it stated that the ALJ in the 1st decision mischaracterized the treatment records as

---

[3] The court would note that the two GAF scores in 2012 were not placed in the record until after the 2nd ALJ decision (March 4, 2011), but these scores were before the Appeals Council when it denied review on May 8, 2012 after considering the additional evidence (R. at 1-6). However, there were still 7 GAF scores of 50 or below from 2006-2011, or before the 2nd ALJ decision.

showing improvement, when in fact the treatment records showed that plaintiff's mental functioning fluctuated, with GAF scores ranging from 40-55 (R. at 128). The ALJ in the 2nd decision clearly erred by mischaracterizing the medical record in order to discount the medical opinions expressed in Exhibit 1F. The ALJ in the 2nd decision erroneously asserted that the evidence showed significant improvement in plaintiff's mental health status, and that there was only one GAF score below 50. The record clearly demonstrates that, in fact, plaintiff's mental functioning fluctuated, and that plaintiff had numerous GAF scores of 50 or below from 2006-2012. As the Appeals Council stated in 2010, further consideration of the medical opinion in Exhibit 1F is necessary, and on remand, the ALJ shall obtain additional evidence regarding plaintiff's depression and anxiety, including the possibility of a consultative examination with psychological testing, or evidence from a medical expert, with medical source statements about what the claimant can still do despite the impairments. Despite this direction to the ALJ from the Appeals Council in 2010, the ALJ in the 2nd decision did not obtain any additional medical opinion evidence regarding plaintiff's mental limitations due to her impairments.[4] After giving further consideration to the medical opinions expressed in Exhibit 1F and any additional evidence obtained, the ALJ

---

[4] According to 20 C.F.R. §§ 404.977(b)(1) and 416.1477(b), the ALJ "shall" take any action that is ordered by the Appeals Council.

11

shall make new RFC findings which consider and address these and all other medical source opinions as required by SSR 96-8p.

**IV. Did the ALJ err at step two in finding that certain impairments were not medically determinable impairments?**

An impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1508, 416.908. Evidence to establish a medically determinable impairment must come from acceptable medical sources. 20 C.F.R. §§ 404.1513(a), 416.913(a). In assessing RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments. SSR 96-8p, 1996 WL 374184 at *2.

The ALJ found that alleged right arm and bilateral leg tingling and fibromyalgia are not medically determinable impairments (R. at 21).[5] Plaintiff argues that the medical evidence establishes that fibromyalgia, numbness and tingling, and left foot plantar fasciitis are medically determinable impairments (Doc. 5 at 30-32). In light of the fact that this case is being remanded for other reasons, on remand, the ALJ shall review the medical evidence and case law cited by

---

[5] However, later in the opinion, the ALJ stated that he gave claimant "the benefit of the doubt" with regard to right arm and leg numbness and tingling when assessing plaintiff's RFC (R. at 28).

plaintiff in her brief (Doc. 5 at 30-32) and determine if the evidence cited to by the plaintiff would support a finding that these impairments are medically determinable impairments.

**V. Did the ALJ err in his consideration of plaintiff's obesity?**

SSR 02-1p is a social security ruling governing the evaluation of obesity. It states that, when assessing RFC, obesity may cause limitations of various functions, including exertional, postural and social functions. Therefore, an assessment should also be made of the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment. Obesity may also affect the claimant's ability to sustain a function over time. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. 2002 WL 32255132 at *7. The discussion in the SSR on obesity and RFC concludes by stating that: "As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." 2002 WL 32255132 at *8.

At step two, the ALJ found obesity to be a severe impairment (R. at 20). The ALJ further stated the following regarding plaintiff's obesity:

> The claimant is obese…there is no disputing that she is obese. Her obesity impacts her pain due to plantar fasciitis and lower back

13

>           impairments as well as the occasional
>           swelling in her feet.  Additionally, her
>           weight has fluctuated over time and
>           increases in her weight may well affect the
>           effectiveness of her medications.

(R. at 24).  The ALJ later stated that the evidence supported a finding that plaintiff is limited to sedentary work due to plantar fasciitis and obesity, and that she is limited in the amount she can lift, carry, and the time she can stand and walk because of plantar fasciitis, back pain, and obesity.  The ALJ further indicated that these impairments also limit her ability to perform postural maneuvers (R. at 28).

It is very clear from the ALJ's decision that he made an assessment of the effect obesity had upon plaintiff's ability to perform physical activity, and imposed a number of limitations due to plaintiff's obesity.  Furthermore, plaintiff has failed to point to any evidence in the record indicating that plaintiff's obesity resulted in limitations not included in the ALJ's RFC findings, or that plaintiff's obesity meets or equals a listed impairment.  See Arles v. Astrue, 438 Fed. Appx. 735, 740 (10th Cir. Sept. 28, 2011); Warner v. Astrue, 338 Fed. Appx. 748, 751 (10th Cir. July 16, 2009).  For these reasons, the court finds no error by the ALJ in his consideration of plaintiff's obesity.

**VI.  Did the ALJ err by failing to discuss the observations of a third party?**

The record contains a statement from an employee of the defendant indicating that plaintiff "had difficulty walking" (R. at 306). This statement was not expressly mentioned by the ALJ in his decision. The ALJ's RFC findings limit plaintiff to standing and/or walking for 2 hours in an 8 hour day, and that she should be allowed to sit and/or stand at will (R. at 22-23). The ALJ's findings are consistent with a physical RFC assessment which limited plaintiff to standing and/or walking for 2 hours in an 8 hour workday, and plaintiff fails to point to any medical opinion evidence indicating that plaintiff is unable to stand and/or walk for 2 hours in a 8 hour workday. Although the ALJ should consider this statement when the case is remanded, the court finds no clear error because of the ALJ's failure to expressly discuss this statement in his decision.

**VII. Did the ALJ err by failing to be specific as to the frequency of the plaintiff's need to alternate sitting and standing?**

In his RFC findings, the ALJ stated that plaintiff should be allowed to "sit and/or stand at will" (R. at 22-23). Plaintiff argues that this finding lacks the requisite specificity required by SSR 96-9p. SSR 96-9p states that the RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. 1996 WL 374185 at *7. This court has previously held that the "at will"

15

limitation clearly provides the requisite specificity.  <u>Trusty v. Astrue</u>, Case No. 11-4012-SAC (D. Kan. Nov. 22, 2011; Doc. 13 at 12 n.3); <u>Forbes v. Barnhart</u>, 2006 WL 4050969 at *8 n.3, Case No. 05-1284-MLB (D. Kan. May 25, 2006; Doc. 10 at 20-21 n.3).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 13th day of August, 2013, Topeka, Kansas.

s/ Sam A. Crow  
Sam A. Crow, U.S. District Senior Judge